United States District Court
Southern District of Texas
**ENTERED**
September 23, 2024
Nathan Ochsner, Clerk

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **MORLOCK, LLC,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | Civil Action No. 4:21-CV-03202 |
| | § | |
| **REGINALD PETTEWAY** and | § | |
| **THE BANK OF NEW YORK-MELLON,** | § | |
| | § | |
| **Defendants.** | § | |

## MEMORANDUM OPINION AND ORDER

This case centers on a battle of property rights: a lienholder who repeatedly delayed foreclosure and a property owner who now claims that those delays have cost the lienholder its interest in the property. After years of unresolved threats and forbearance, the Bank of New York-Mellon's efforts to enforce its lien face a critical challenge—Morlock, LLC, the current owner, argues that time has run out, and with it, the Bank of New York-Mellon's legal ability to foreclose. With two competing motions for summary judgment before it, the Court must now determine whether the Bank of New York-Mellon's inaction has extinguished its claim, or if its lien clouds Morlock's title to the property. After careful review, the Court **GRANTS** Morlock's Motion for Summary Judgment, (Dkt. No. 17), and **DENIES** The Bank of New York-Mellon's Motion for Summary Judgment, (Dkt. No. 20).

I.      **BACKGROUND**[1]

This case centers on The Bank of New York-Mellon's ("BONY") efforts to foreclose its lien on single-family residence located at 14431 Daly Drive, Houston, TX 77077 ("the Property").   Reginald Petteway bought the Property in 2006 and executed a loan (the "Note") in the principal amount of $397,600.00.  (Dkt. No. 23 at 4–5).  The Note was secured by a deed of trust, giving the lender a security interest in the Property.  (*Id*. at 5).  The original beneficiary of the Note and the deed of trust assigned its interest to BONY in late 2006.  (Dkt. No. 18 at 3).

After the loan closed in 2006, Petteway defaulted almost immediately.  (Dkt. No. 17 at 3).   BONY accelerated the Note's maturity and scheduled a foreclosure sale for January 2, 2007.  (*Id.*).  That sale never happened, however, as BONY's mortgage servicers tried to work with Petteway to cure his default.  (*See* Dkt. No. 18 at 4–5).

In addition to making payments under the Note, Petteway was responsible for paying Homeowners Association ("HOA") fees on the property.  (Dkt. No. 17 at 3).  Petteway failed to pay these HOA fees.  (*Id*. at 4).  Therefore, in October 2011, the HOA's trustee foreclosed on the HOA's lien on the Property and sold the Property to Morlock, L.L.C. ("Morlock").  (Dkt. No. 18 at 5); (Dkt. No. 20 at 4).  Morlock purchased the Property "subject to any superior liens and encumbrances against the property as provided for in

---

[1]      Except where noted, this Section contains only undisputed facts, and all facts and reasonable inferences have been construed in favor of the nonmovant.  *Renfroe v. Parker*, 974 F.3d 594, 599 (5th Cir. 2020).  The Court has not weighed evidence or made credibility findings.  *Id.*

the Declaration or at law," (Dkt. No. 17-2 at 2–3), and took title subject to the lien created by the deed of trust held by BONY, (Dkt. No. 20 at 4).

On May 5, 2016, BONY accelerated the maturity of the Note and attempted to foreclose on its lien.  (Dkt. No. 18 at 7).  BONY notified Morlock of a trustee's sale scheduled for June 21, 2021.  (*Id*. at 8).  Morlock sued BONY to prevent the sale, (*id*. at 9), seeking a declaratory judgment "that it is the owner of the Property" and that BONY has "no interest in the Property," and also asserting claims of "Trespass to Try Title" and "Removal of Cloud on Title," (Dkt. No. 1-3 at 3–4).

Morlock initially filed suit in the 80th District Court of Harris County, Texas, in July of 2021.  (Dkt. No. 1).  BONY answered and counterclaimed in September and removed the case to federal court in October of 2021.  (Dkt. No. 18 at 9).  The case was originally assigned to Judge Lynn N. Hughes but was reassigned to the undersigned in February of 2023.[2]  (Dkt. No. 9).

Morlock and BONY have both moved for summary judgment.  Morlock argues that it is entitled to prevail as a matter of law because BONY did not foreclose on the deed of trust within Texas's four-year statute of limitations.  (Dkt. No. 17).  BONY cross-moved for summary judgment offering various arguments as to why foreclosure is not barred by the statute of limitations.  (Dkt. No. 20).

---

[2]     Judge Hughes denied Morlock's Motion to Remand, (Dkt. No. 5), explaining that while Morlock is considered a Texas citizen and one of the named defendants—Reginald Petteway—is also a Texas citizen, diversity of citizenship nevertheless exists because the inclusion of Petteway as a party was improper.  (Dkt. No. 8 at 1).  At that juncture, Petteway should have been dismissed as a defendant; the Court, therefore, finds that the dismissal of Petteway is proper.

## II.     LEGAL STANDARD

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it could affect the outcome of the suit under governing law. *E.g.*, *Renwick v. PNK Lake Charles, LLC*, 901 F.3d 605, 611 (5th Cir. 2018). And "[a] dispute about a material fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *TIG Ins. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion" and identifying the record evidence that "it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). "If the moving party fails to meet [its] initial burden, the motion [for summary judgment] must be denied, regardless of the nonmovant's response." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam).

If the movant meets this burden, the nonmovant must come forward with specific facts showing there is a genuine issue for trial. Fed. R. Civ. P. 56(c); *see also Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). The nonmovant must "go beyond the pleadings and by [the nonmovant's] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Nola Spice Designs, LLC v. Haydel Enters.*, 783 F.3d 527, 536 (5th Cir. 2015) (quotation omitted). "The

nonmovant must identify specific evidence in the record and articulate the precise manner in which that evidence supports his or her claim." *Carr v. Air Line Pilots Ass'n, Int'l*, 866 F.3d 597, 601 (5th Cir. 2017) (per curiam) (cleaned up), *as revised* (July 14, 2017). If evidence is merely colorable or not significantly probative, summary judgment is appropriate. *Parrish v. Premier Directional Drilling, L.P.*, 917 F.3d 369, 378 (5th Cir. 2019).

In reviewing a motion for summary judgment, the district court views the evidence in the light most favorable to the nonmovant. *Carr*, 866 F.3d at 601. This means that factual controversies are to be resolved in the nonmovant's favor, "but only when . . . both parties have submitted evidence of contradictory facts." *Little*, 37 F.3d at 1075.

## III. DISCUSSION

As a preliminary matter, the summary-judgment evidence establishes—and the Parties do not dispute—that when Morlock became the owner of the Property, it "took title subject to the lien created by the Deed of Trust." (Dkt. No. 20 at 4). However, Morlock seeks a declaratory judgment "that it is the owner of the Property" and that BONY has "no interest in the Property." (Dkt. No. 1-3 at 3). So, Morlock brought a "Trespass to Try Title" and "Removal of Cloud on Title" claim. (*Id.* at 4).

Under Texas law,[3] a trespass to try title action and a suit to quiet title are distinct causes of action. *Fricks v. Hancock*, 45 S.W.3d 322, 327 (Tex. App.—Corpus Christi–Edinburg 2001, no pet.). "A trespass to try title action is a statutory cause of action that

---

[3]   Neither Party disputes that Texas law applies, and both Parties exclusively cite Texas law.

is 'the method of determining title' to real property." *Richardson v. Wells Fargo Bank, N.A.*, 873 F.Supp.2d 800, 816 (N.D. Tex. 2012) (quoting Tex. Prop. Code § 22.001), *aff'd*, 538 Fed. App'x. 391 (5th Cir. 2013). "[A] suit to quiet title is an equitable action intended to remove a cloud of title" to that property.[4] *Id.* (citing *Fricks*, 45 S.W.3d at 327).

Here, while Morlock asserts both types of claims, it asks the Court to hold that enforcement of BONY's deed of trust "is barred by the Texas four (4) year statute of limitations." (Dkt. No. 17 at 1). Accordingly, the nature of Morlock's claim is one to quiet title because Morlock's contention "'relies on the invalidity of the defendant's claim to the property.'" *Costello v. U.S. Bank Tr., N.A.*, No. 4:16-CV-00702, 2016 WL 5871459, at *3 (S.D. Tex. Oct. 7, 2016) (quoting *Essex Crane Rental Corp. v. Carter*, 371 S.W.3d 366, 388 (Tex. App.—Houston [1st Dist.] 2012, pet. denied)).

The elements of the cause of action to quiet title are: (1) an interest in a specific property; (2) title to the property is affected by a claim by the defendant; and (3) the claim, although facially valid, is invalid or unenforceable. *Cruz v. CitiMortgage, Inc.*, No. 3:11-CV-02871, 2012 WL 1836095, at *4 (N.D. Tex. May 21, 2012) (citing *Sadler v. Duvall*, 815 S.W.2d 285, 293 n.2 (Tex. App.—Texarkana 1991, writ denied)).

The Parties do not dispute the first two elements: (1) as the purchaser of the Property, Morlock has an interest in the Property; and (2) title to the property is affected by BONY's deed of trust and foreclosure efforts. The only dispute is whether that deed

---

[4]   A suit to quiet title is also known as a suit "to remove a cloud from a title." *See, e.g.*, *Hahn v. Love*, 321 S.W.3d 517, 531 (Tex. App.—Houston [1st Dist.] 2009, pet. denied). These suits seek to "clear[] a title of an invalid charge against the title." *Longoria v. Lasater*, 292 S.W.3d 156, 165 n.7 (Tex. App.—San Antonio 2009, pet. denied) (emphasis and quotation omitted).

of trust, "although facially valid, is invalid or unenforceable." *Id.*  On this point, Morlock argues that BONY's enforcement of its lien "is barred by the Texas four (4) year statute of limitations." (Dkt. No. 17 at 1); (Dkt. No. 23 at 1).

In Texas, "[a] person must bring suit for . . . the foreclosure of a real property lien not later than four years after the day the cause of action accrues." Tex. Civ. Prac. & Rem. Code § 16.035(a).  A noteholder's right to foreclose does not automatically accrue upon default; instead, it is "when the note reaches its maturity date or the holder exercises its option to accelerate the note's maturity date." *Pitts v. Bank of N.Y. Mellon Tr. Co.*, 583 S.W.3d 258, 262 (Tex. App.—Dallas 2018, no pet.) (citing *Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 566 (Tex. 2001)).  However, if the holder abandons acceleration before the limitations period expires, "the note's original maturity date is restored and the noteholder is no longer required to foreclose within four years from the date of acceleration." *Leonard v. Ocwen Loan Servicing, LLC*, 616 F.App'x. 677, 679 (5th Cir. 2015). Abandonment of acceleration is based on principles of waiver, and a "party can waive a right 'either expressly, through a clear repudiation of the right, or impliedly, through conduct inconsistent with a claim to the right.'" *Bank of N.Y. Mellon Tr. Co. Nat'l Ass'n v. Meachum*, No. 21-10766, 2022 WL 1171059, at *2 (5th Cir. Apr. 20, 2022) (per curiam) (quoting *G.T. Leach Builders, LLC v. Sapphire V.P., LP*, 458 S.W.3d 502, 511 (Tex. 2015)). The latter requires conclusive evidence showing that "the party unequivocally manifests its intention to no longer assert its right." *Colbert v. Wells Fargo Bank, N.A.*, 850 F.App'x 870, 875 (5th Cir. 2021) (per curiam).  When the relevant facts are undisputed, whether acceleration has been abandoned is a question of law. *Boren v. U.S. Nat'l Bank Ass'n*, 807

F.3d 99, 106 (5th Cir. 2015) (citing *G.T. Leach Builders*, 458 S.W.3d at 511); *see also Stewart v. U.S. Bank Nat. Ass'n*, 107 F.Supp.3d 705, 708 n.3 (S.D. Tex. 2015) ("Because the material facts concerning abandonment are not disputed—rather, the issue is the legal ramifications of these facts—determination of whether acceleration was abandoned is appropriate on summary judgment.").

Both Parties agree that the Note was accelerated sometime in 2006 and again in 2016. (*See* Dkt. No. 20 at 4, 6); (Dkt No. 23 at 5). Morlock argues that even assuming the 2016 acceleration, more than four years had passed when BONY attempted to foreclose on the lien in June 2021. (*See* Dkt. No. 17 at 5–6). BONY's attempt to enforce its void deed was therefore ineffective. (*See id.*). BONY responds that it was not required to foreclose within four years from the date of acceleration because it abandoned both the 2006 and 2016 accelerations before the limitations periods expired. (*See* Dkt. No. 20 at 8–18). The Court considers each acceleration and whether it was abandoned.

### A.   THE 2006 ACCELERATION

The Parties agree that BONY accelerated the Note in 2006 and again in 2016. (Dkt. No. 20 at 4, 6); (Dkt No. 23 at 5). While the Parties dispute whether BONY abandoned the 2016 acceleration, Morlock does not address BONY's contention that it abandoned the 2006 acceleration.[5] The Court agrees with BONY that it abandoned the 2006 acceleration.

---

[5]   Morlock claims that acceleration occurred "as early as 2006 and as late as May 5, 2016." (Dkt. No. 17 at 1). Despite giving these two dates, Morlock does not offer any evidence or argument as to why the 2006 acceleration was not abandoned. Instead, Morlock submits that the
(continue)

In support of its argument, BONY identifies seven events which, "taken separately, could each constitute abandonment." (Dkt. No. 20 at 13). The Court need not consider all seven because the first two, when considered together, are sufficient to establish abandonment. First, BONY points to the post-acceleration date of January 3, 2007, when the loan servicer at the time accepted past-due monthly payments rather than the full accelerated amount. (Dkt. No. 20-2 at 4). And second, BONY offers a February 2, 2007 letter advising Petteway that $6,842.57 was due and that if he failed to cure the default by March 4, 2007, "the mortgage payments **will be accelerated** with the full amount remaining accelerated and becoming due and payable in full." (Dkt. No. 20-4 at 3) (emphasis in original).

The Fifth Circuit, has consistently found the unequivocal-manifestation standard met "where the lender, after accelerating a debt, sent subsequent notices of default seeking only the amount overdue and warning borrowers that, in the event of failure to cure, the debt would be accelerated." *Sexton v. Deutsche Bank Nat'l Tr. Co. for GSAMP Tr. 2007-FM2, Mortg. Pass-Through Certificates, Series 2007-FM2*, 731 F.App'x 302, 308 (5th Cir. 2018) (per curiam) (collecting cases). Accordingly, BONY's attempt to foreclose on its lien is not precluded by the 2006 acceleration, which it abandoned.

## B.    THE 2016 ACCELERATION

The Parties' real dispute is whether BONY abandoned its 2016 acceleration. BONY argues that "[t]he uncontroverted summary judgment evidence conclusively

---

Note had surely been accelerated in May 2016, electing to "address only the [May 2016] acceleration." (Dkt. No. 23 at 2).

demonstrates that [it] unilaterally abandoned" the acceleration "by communicating its willingness to engage in loss mitigation efforts with Petteway."  (Dkt. No. 20 at 14). BONY cites seven events that occurred after the 2016 acceleration that "could each constitute abandonment."  (*Id.* at 15–16).  Morlock responds that the evidence BONY relies on does not show a clear intent to abandon acceleration and that nothing in the evidence suggests a restoration of the original maturity date.  (Dkt. No. 23 at 12–18).  The Court agrees with Morlock.

Upon review of the Parties' briefing, it appears that there is one factual dispute concerning the 2016 acceleration.  BONY states that Petteway contacted Specialized Loan Servicing, LLC ("SLS"), BONY's mortgage servicer at the time, "seeking mortgage assistance," which is what started the loss-mitigation efforts between Petteway and SLS in 2017.  (Dkt. No. 20 at 17).  Morlock responds that, while the first letter BONY offers is from SLS and is purportedly "in response to a request or inquiry from Petteway," that account "is highly doubtful" given the lack of evidence.  (Dkt. No. 23 at 14).  Morlock asserts that Petteway likely never reached out and that BONY's "response" was "a random computer-generated letter in the hope that there would be a response."[6]  (*Id.*).

Although this is a factual dispute, it is not material.  Whether Petteway initiated the conversations has no bearing on the substance of BONY's representations.  This is true even if those representations were made "in response" to an inquiry by Petteway

---

[6]    Morlock notes that "it would have been highly unlikely that Petteway would have initiated any contact" because Petteway had lost title to the Property over five years before.  (Dkt. No. 23 at 14–15).  Accordingly, Petteway "had absolutely no reason to have requested or even been interested in a loan modification."  (*Id.* at 15).

and unambiguously manifested an intent to abandon acceleration.  On, then, to the evidence.

In arguing that it abandoned acceleration of the Note, BONY cites seven events, each of which it contends could constitute abandonment.  These fall into three basic groups: (1) the June 21, 2021, acceleration notice; (2) the numerous monthly statements provided by SLS to Petteway "between May 18, 2016, and November 19, 2017"; and (3) five letters regarding loss mitigation sent by SLS to Petteway spanning from June 12, 2017, to December 29, 2020.  (Dkt. No. 20 at 15–16).

### 1.    The June 21, 2021 Acceleration

First, BONY's June 21, 2021 acceleration notice.  (Dkt. No. 20 at 15).  BONY argues that, because it accelerated the loan on June 21, 2021, it must have abandoned the 2016 acceleration sometime within four years of that acceleration.  The Court disagrees.  Every case the Court has found addressing whether an acceleration was abandoned involves a later acceleration.  If every later acceleration established that previous accelerations were abandoned, courts would always find abandonment.  "Such a rule would make a mockery of the statute of limitations."  *Swoboda v. Ocwen Loan Servicing, LLC*, No. 4:13-CV-02986, 2015 WL 12778394, at *2 (S.D. Tex. Aug. 10, 2015).  The Court does not find abandonment on the basis of the 2021 acceleration.

### 2.    The Monthly Statements

BONY also points to "monthly statements that indicated the current amount of Petteway's default."  (Dkt. No. 20 at 16).  BONY argues that because the monthly statements sent to Petteway by SLS reflected charges of less than the full accelerated

amount, those statements should be taken as an abandonment of the acceleration. (*Id.* at 16–18). The Fifth Circuit, however, has rejected this argument.

For example, in *Colbert*, the Fifth Circuit explained that the bank's "request for a lesser amount was a reinstatement amount that Plaintiffs could pay to avoid acceleration, and it did not evidence a clear intent to abandon acceleration." 850 F.App'x at 875. Similarly, the statements here referred to the amount due as the "[a]mount to bring loan current," (*e.g.*, Dkt. No. 25 at 1, 3, 5), and the "[a]mount to reinstate your loan," (*e.g.*, *id.* at 41, 44, 46). They did not otherwise indicate abandonment. *See Lyons v. Select Portfolio Servicing Inc.*, 748 F.App'x 610, 611–12 (5th Cir. 2019) (per curiam) (finding that a post-acceleration restatement notice seeking less than the full accelerated amount while silent on acceleration did not manifest an intent to abandon acceleration).

The cases make clear that an unambiguous manifestation requires language stating that the loan *would be accelerated* if the borrower does not pay the amount demanded. *See Pitts,* 583 S.W.3d at 264–65 (collecting cases). As the court explained in *Pitts*, "[l]anguage stating that the loan *would be* accelerated is inconsistent with an earlier notice of acceleration and clearly establishes the noteholder's abandonment of the earlier acceleration because, if the noteholder intended to rely on the earlier notice of acceleration, it would not state that acceleration could occur in the future." *Id.* at 265 (emphasis in original). And absent that language, as is the case here, the monthly statements do not conclusively establish abandonment. *Id.*

The monthly statements do not unequivocally manifest BONY's intent to abandon the 2016 acceleration.

### 3.   __The Loss Mitigation Letters__

Five of the seven events BONY identifies as evidence of abandonment are communications with Petteway regarding loss mitigation.  (*See* Dkt. No. 20 at 15).  The first was on June 12, 2017, when SLS informed Petteway that it was reviewing his application for mortgage relief.  (Dkt. No. 20-17 at 1).  A few days later, on June 12, 2017, SLS informed Petteway that he had been approved for a mortgage relief option, which, if he accepted and successfully made all the trial period payments, would result in a modification of his loan.  (Dkt. No. 20-18 at 1, 8).  Months later on September 7, 2017, SLS informed Petteway that it could not offer him a modification because he did not make all the trial-period payments.  (Dkt. No. 20-19).  Nearly a year later, on August 17, 2018, SLS advised Petteway that he had several options that might help him keep his home, including reinstatement, a repayment plan, a modification, or a forbearance plan.  (Dkt. No. 20-20 at 5).  Finally, more than two years later, on December 29, 2020, SLS informed Petteway that his mortgage account was delinquent and encouraged him to contact SLS to discuss possible loss-mitigation options, including those it shared with him on August 17, 2018.  (Dkt. No. 20-21 at 1).  BONY did not mention in any of these letters that it considered the loan accelerated.

Morlock responds that these letters do not sufficiently show abandonment of the acceleration, as they are conditional and incomplete in various ways, and one even indicates that "the prior acceleration *had not* and *would not* be abandoned."  (Dkt. No. 23 at 14–18) (emphasis added).  The central question, then, is whether any of the post-

13

acceleration letters SLS sent to Petteway encouraging loss-mitigation options show abandonment.  The answer is no.

True, SLS presented Petteway with various *potential* loss mitigation options.  But courts have found that loan modifications support abandonment when the borrower *agreed* to, and the lender *accepted*, the payments under the loss-mitigation plan.  *See*, *e.g.*, *Bracken v. Wells Fargo Bank, N.A.*, No. 05-16-01334-CV, 2018 WL 1026268, *5 (Tex. App.— Dallas Feb. 23, 2018, pet. denied); *Guzman v. Bank of N.Y. Mellon*, No. 5:16-CV-01210, 2018 WL 8061011, at *1, *5 (W.D. Tex. Feb. 23, 2018).  "[A]bsent more, an offer of a loan modification agreement is at most a *conditional* abandonment: if the borrower does not accept the loan modification, then the status of the loan does not change[,] and the prior acceleration remains intact."  *Swoboda*, 2015 WL 12778394, at *2 (emphasis in original); *see also Bank of N.Y. Mellon Tr. Co. Nat'l Ass'n v. Meachum*, No. 3:20-CV-02250, 2021 WL 2879617, at *7 (N.D. Tex. May 6, 2021), *report and recommendation adopted*, No. 3:20-CV-02250, 2021 WL 2677859 (N.D. Tex. June 30, 2021), *aff'd*, No. 21-10766, 2022 WL 1171059 (5th Cir. Apr. 20, 2022) (holding that a servicer did not abandon the loan by sending the borrower a letter listing potential loss mitigation options).

The distinction between "potential" and "accepted" mitigation options is highlighted all the more when reading SLS's offers to mitigate loss in context.  As Morlock points out, one of the letters explicitly made clear that "[a]ny pending foreclosure action or proceeding that has been suspended may be resumed if you fail to comply with the terms of the plan or do not qualify for a permanent modification."  (Dkt. No. 20-18 at 9). In a similar case where the defendant "evince[d] a willingness . . . to accept less than the

14

full accelerated amount," the offer stated that "[i]f you make your trial payments on time each month, we won't conduct a foreclosure sale." *Hollenshead v. Bank of Am., N.A.*, No. 4:18-CV-00724, 2020 WL 4615096, at *15 (E.D. Tex. May 19, 2020), *report and recommendation adopted*, No. 4:18-CV-00724, 2020 WL 3496335 (E.D. Tex. June 29, 2020). The court found that the offer failed to establish abandonment because the remedy of foreclosure would have been "unavailable to Defendants if acceleration had in fact been abandoned." *Id.* So too here. SLS noted the possibility that foreclosure would be resumed—a remedy inconsistent with the notion that SLS considered the acceleration to be abandoned.

In sum, SLS's loss mitigation efforts demonstrates that BONY did not unequivocally abandon its 2016 acceleration.

## C.    TEXAS'S COUNTERCLAIM SAVINGS STATUTE

Even if the limitations period had run, BONY argues that since it filed a counterclaim in response to Morlock's lawsuit, the Texas counterclaim savings statute applies. (Dkt. No. 20 at 18). That statute provides:

> If a counterclaim or cross claim arises out of the same transaction or occurrence that is the basis of an action, a party to the action may file the counterclaim or cross claim even though as a separate action it would be barred by limitation on the date the party's answer is required.

Tex. Civ. Prac. & Rem. Code § 16.069(a). BONY argues that its judicial foreclosure claims are saved because Morlock did not merely seek a declaratory judgment, but rather "asserted claims for quiet title, removal of a cloud of title, and an award of attorney's fees in connection with those claims." (Dkt. No. 20 at 18–21); *see Holman St. Baptist Church v.*

*Jefferson*, 317 S.W.3d 540, 545 (Tex. App.—Houston [14th Dist.] 2010, pet. denied) ("Courts have interpreted section 16.069 as permitting a party's otherwise time-barred counterclaims or cross claims only when the opposing party has sought 'affirmative relief,' rather than just a declaration on a dispute between the parties.").

Section 16.035 addresses suits for recovery of real property. Section 16.035(a) mandates that "[a] person must bring suit for the recovery of real property under a real property lien or the foreclosure of a real property lien not later than four years after the day the cause of action accrues" and Section 16.035(d) provides that "[o]n the expiration of the four-year limitations period, the real property lien and a power of sale to enforce the real property lien become void."

In *Bitterroot Holdings, LLC v. Bank of New York Mellon*, the court considered how Section 16.069 interacted with the 16.035 Sections and explained that Section 16.069 did not permit an untimely judicial foreclosure. No. 5:14-CV-00804, 2017 WL 10181041, at *12 (W.D. Tex. Aug. 4, 2017). When the lender failed to foreclose within the four-year period, it "void[ed] the lien and the power of sale," and "[a] void lien is forever void. It is no more. It has ceased to be." *Id.* As the court explained, Section 16.035(d), despite being "often referred to as a statute of limitations, . . . is not merely a procedural bar to suit." *Id.* As a substantive matter, "the language of section 16.035(d) voids a lien upon the failure to bring a suit or force a sale within four years of accelerating the lien." *Id.*

This Court agrees with the well-reasoned analysis and finds that while Section 16.069 might revive an untimely counterclaim, it cannot revive a void lien.[7]  Therefore, BONY's assertion of a counterclaim against Morlock does not change the fact that the lien "is bereft of life, and section 16.069 cannot raise it from the dead."  *Id.*  Considering Sections 16.035(a) and (d) and Section 16.069, to whatever extent BONY's counterclaim for judicial foreclosure is revived under Section 16.069, it necessarily fails as a matter of law under Section 16.035(d).  Having already determined that BONY did not abandon the 2016 acceleration, *supra* III.B, Morlock is entitled to judgment as a matter of law.

## IV.  CONCLUSION

For the reasons above, Morlock's Motion for Summary Judgment, (Dkt. No. 17), is **GRANTED**, and BONY's Motion for Summary Judgment, (Dkt. No. 20), is **DENIED**.

The Parties are **ORDERED** to confer and submit a proposed final judgment that conforms with this Memorandum Opinion and Order no later than September 29, 2024.

It is SO ORDERED.

Signed on September 23, 2024.

*Drew B. Tipton*

**DREW B. TIPTON**
**UNITED STATES DISTRICT JUDGE**

---

[7]     Indeed, BONY's proffered alternative interpretation of Section 16.069 would permit a party "to foreclose on a lien, lose the lien, and then revive the lien by filing a counterclaim in a trespass to try title lawsuit."  *Bitterroot*, 2017 WL 10181041 at *12.  "Such an interpretation . . . would allow virtually any party to revive a void lien, wreaking havoc on foreclosure proceedings throughout the State of Texas."  *Id.*